IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

HELENA DIVISION

_____

| | |
|---|---|
| ROY LEE SMITH, | Cause No. CV 12-44-H-DLC-RKS |
| Petitioner, | |
| vs. | FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE |
| LEROY KIRKEGARD, Warden of the Montana State Prison; ATTORNEY GENERAL OF THE STATE OF MONTANA, | |
| Respondents. | |

_____

## I.  Synopsis

Petitioner Roy Lee Smith seeks federal habeas relief. He argues he had ineffective assistance of counsel and his plea colloquy was faulty because he did not specifically admit to essential elements of the offense. Mr. Smith's claim may be procedurally barred because he has not shown that the Montana Supreme Court made an objectively unreasonable decision to dismiss his claims. More clearly, his claims fail on their merits because the record indicates Mr. Smith's plea colloquy and

1

representation were adequate.

## II. Status

Mr. Smith is a state prisoner proceeding pro se. CD 6. In 2003, he was charged with operating an unlawful clandestine laboratory after an explosion, apparently caused by chemicals used to manufacture methamphetamine. CD 11, p. 7. Smith eventually reached a plea agreement with the state and plead guilty to the lesser charge of criminal endangerment. CD 11-5. The State did not file an amended Information, but the amended charge was identified in the Acknowledgment of Waiver of Rights and at the change-of-plea hearing. CD 11-5, pp. 1-2, CD 11-6, p.3. The original charge carried a longer maximum prison term than the amended charge under the plea agreement – 20 years compared to 10 years. Mont. Code Ann. §§ 45-9-132(2) (2001); 45-5-207(2) (2001).

In Mr. Smith's plea colloquy he said, "I carried some dangerous chemicals into my grandmother's house, and they were set loose and hurt some people and – that's – I'm very sorry for that." CD 11-6, p. 8. Mr. Smith was sentenced to eight years in the custody of the Montana Department of Corrections, all suspended. CD 11-7. In 2008, Mr. Smith's probation was revoked for failure to follow the terms, and he was sentenced to eight years in the Department of Corrections with three years suspended. CD 11-19. He promptly absconded, was caught, and was charged and convicted with

escape. CD 1-2. The escape charge was predicated on the sentence Mr. Smith was serving for criminal endangerment. See Mont. Code Ann. § 45-7-306(1)(a), (2) (2007).

In 2010, Mr. Smith filed a Motion in Montana District Court to withdraw his guilty plea to criminal endangerment, on the basis of his allegedly inadequate plea colloquy and ineffective council. CD 11-13. The district court denied the motion. CD 11-14. Mr. Smith appealed the denial to the Montana Supreme Court, which affirmed. CD 11-18.

Mr. Smith filed a petition seeking a write\ of habeas corpus under 28 U.S.C. § 2254 from this court on May 25, 2012. CD 1. Respondent ("the State") was required to file an Answer. CD 6. It complied on August 31, 2012. CD 11. Mr. Smith filed a reply. CD 12. His petition is now ripe for consideration.

### III. Claims

In his federal petition, Mr. Smith first contends that his guilty plea was invalid because his plea colloquy did not expressly show he knew he was creating a substantial risk of serious injury or death. He also asserts that he was not informed of potential lesser included offenses. CD 1, pp. 4-9. Secondly, Mr. Smith avers that trial counsel was ineffective because he failed to investigate whether Mr. Smith was guilty, failed to test the prosecution's case, and advised Mr. Smith to plead guilty to

something he did not do in order to obtain a non-custodial sentence. *Id.* at 9-13. Finally, Mr. Smith asserts that the amended charge was not properly filed and that, as a result, he was unconstitutionally deprived of fair notice, and the trial court lacked jurisdiction to convict and sentence him. *Id.* at 14-17; CD 1-2, p. 1.

## IV. Analysis

Federal habeas relief is available to a state prisoner who is in custody in violation of federal law. 28 U.S.C. § 2254(a). Generally, the petitioner must first present to the state courts the facts and the basis in federal law of each individual claim he presents in his federal habeas petition. *Rose v. Lundy*, 455 U.S. 509, 520 (1982). The federal court then defers to the state courts' resolution of those claims. 28 U.S.C. § 2254(d). Where the state court adjudicates the merits of a claim, federal habeas relief is available only if the state court's decision was "contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(1), (2). In other words, "[i]t is not enough" for a state prisoner to show that a state court's decision was incorrect. He must also show the state court's decision was objectively unreasonable. *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003).

Although the Montana Supreme Court adjudicated the merits of Mr. Smith's

claims, it did not specifically discuss federal law in its decision. A case questioning whether the stringent standards of 28 U.S.C. § 2254(d) apply when the state court does not address federal law is pending before the United States Supreme Court. *Johnson v. Williams*, No. 11-465 (U.S. argued Oct. 3, 2012). To ensure the correct result, Mr. Smith's claims are here addressed *de novo*. *Frantz v. Hazey*, 533 F.3d 724, 737 (9th Cir. 2007) (en banc).

**A. Plea Colloquy**

Mr. Smith is correct that the plea colloquy did not specifically and explicitly establish he knowingly created a substantial risk of serious bodily injury to others when he carried dangerous chemicals into his grandmother's house. That alone does not entitle him to federal habeas relief. "[J]ust as there are many fair trials but few perfect ones, so flaws are also to be expected in [guilty plea] proceedings." *United States v. Raineri*, 42 F.3d 36, 45 (1st Cir. 1994) (referring to Fed. R. Crim. P. 11), *quoted in United States v. Dominguez Benitez*, 542 U.S. 74, 83 n.9 (2004). The record must show a knowing, voluntary, and intelligent waiver by the defendant of his central trial rights. *Boykin v. Alabama*, 395 U.S. 238, 243-44 (1969). This imperative is accompanied by few specifics, and no particular mode of inquiry is prescribed. *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005); *McCarthy v. United States*, 394 U.S. 459, 464 (1969). In particular, the Supreme Court has "never held that the judge must

5

himself explain the elements of each charge to the defendant on the record." *Stumpf*, 545 U.S. at 183. Instead, the "totality of the circumstances" may show that the plea was voluntary. *Henderson v. Morgan*, 426 U.S. 637, 644 (1976); *see also Stumpf*, 545 U.S. at 185-86 (examining all circumstances to determine whether plea was voluntary).

Here, the record supports the trial court's finding that the plea was voluntary. In his post-plea submissions, Mr. Smith frequently refers to his guilty plea as if it were based on his carrying a blue cooler into his grandmother's house. CD 1, pp. 4-5; CD 12, pp. 7, 9. But no one said anything at the plea colloquy about a blue cooler. The trial judge heard Mr. Smith say, "I carried some dangerous chemicals in my grandmother's house." CD 11-6, p.8. That is a fair admission to knowingly placing others at substantial risk of serious bodily injury.

In addition, contrary to Mr. Smith's claim, his statement did not show he was "a[t] best, guilty of (Misd.) 'Negligent Endangerment'." CD 1, p. 8; CD 11-6, pp. 4, 5-6. Negligence, under Montana's criminal law, is conscious disregard of a known risk. Mont. Code Ann. § 45-2-101(42). If, as Mr. Smith says, he only carried a container into his grandmother's house without knowing it contained dangerous chemicals, he is not guilty of anything. But nothing he or anyone else said remotely alerted the trial court that he might have meant "I carried a blue cooler into my

grandmother's house, and it turns out it contained dangerous chemicals that escaped" when he said "I carried some dangerous chemicals in my grandmother's house, and they were set loose and hurt some people and – that's – I'm very sorry for that." Change of Plea Tr. at 8:10-13.

Even if the colloquy could have been more exhaustive, counsel assured the court that he had "fully advised" Mr. Smith and was "satisfied that this plea has been entered voluntarily." CD 11-6, pp. 7-8; *see also Stumpf*, 545 U.S. at 183 (noting distinction between "a defendant unaware of the elements of the crime" and a record containing "at least a representation by defense counsel that the nature of the offense has been explained to the accused") (quoting *Morgan*, 426 U.S. at 647).

Counsel's assurances, along with Mr. Smith's own statements, supported the trial court's finding that Mr. Smith's guilty plea to criminal endangerment was voluntary. The colloquy was legally adequate to support the trial court's adjudication of guilt.

### B. Ineffective Assistance of Counsel

Mr. Smith could obtain relief if he can show that his plea, unbeknownst to the trial court, was not voluntary because it was based on erroneous advice he received from counsel. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Mr. Smith must also show that, but for counsel's errors, he would not have pled guilty and would have

proceeded to trial. *Hill v. Lockhart*, 474 U.S. 52, 56-59 (1985).

### 1. Counsel's Advice

A reasonable attorney reviewing the documents filed by the State would have believed the State could call witnesses to establish that Mr. Smith knowingly engaged in conduct that created a substantial risk of serious bodily injury to others. That is the crime of criminal endangerment. Mont. Code Ann. § 45-5-207(1). Thomas McDaniel, Mr. Smith's uncle, gave a statement to authorities:

> . . . McDaniel received a phone call from Smith and he was yelling that something blew up in the basement of the residence and that he needed help. . . . They attempted to go into the basement of the residence, but the smell of the ammonia was strong and burned his lungs. They went back outside and Smith told him to get the respirators out from behind the seat of McDaniel'[s] pickup. McDaniel said that [the] respirators belong to him . . . . He thought that Smith possibly put them in behind the seat while they were moving.
> . . .
> They put the . . . items in the back of McDaniel'[s] pickup and started driving towards Townsend Montana. During the drive, Smith told McDaniel that it was anhydrous ammonia in the tank and that it was going to be used to make methamphetamine.
> They continued to drive towards Townsend and stopped near Winston. Smith got out of the vehicle and threw the cooler and duffle bags over a fence along the road. They then drove back towards Helena
> . . . .

Aff. in Supp. of Information at 4 ¶¶ 11, 13-14, *State v. Smith*, No. DC-2003-141

(Mont. 1st Jud. Dist. May 14, 2003) (doc. 11-2);[1] *see also id.* at 2 ¶ 3 ("Wendie [Smith's wife] said that she told Roy several times to call 911, but Roy told her not to call the cops."), 3 ¶ 4 (a neighbor "was told not to call the police").[2] Firefighters found no trace that anything in the basement, such as the furnace, exploded, but on the other hand, they detected a significant quantity of ammonia gas in the air. Aff. in Supp. of Information at 1 ¶ 1, 2-3 ¶ 4. A reasonably competent attorney, advised of the State's factual allegations, could reasonably conclude that Mr. Smith could be convicted of criminal endangerment. Counsel's advice was not wrong.

### 2. Prejudice

Mr. Smith has stated that:

> Smith's counsel advised that the quickest means in which the defendant would be able to return to pregnant wife, absent posting a $50,000. bail, was by pleading guilty and that if Smith would continue with the arrangement [to debrief with law enforcement] counsel would then be able to argue a lesser sentence based upon the value of the information given. . . .
> Regardless that Smith was desparate for his release from the detention facility and participated in an agreement with (at that time) unsettled sentencing terms, Smith questions the propriety of counsel facilitating him in pleading guilty to any felony to which his client is not actually guilty; Or to a case he has not investigated.

---

[1] The Affidavit is double hearsay, but it is set forth here to show what counsel had to work with, not as proof of the elements of the offense.

[2] Witnesses do sometimes fail to testify as expected, but the only way to settle that issue is to put the State to its burden at trial. Mr. Smith cannot reasonably question his guilty plea on the grounds that it meant he did not go to trial, because he knew that. Change of Plea Tr. at 6:18-23.

9

Appellant Br. at 14, *State v. Smith*, No. DA 11-0682 (Mont. Dec. 7, 2011) (doc. 11-15). Although this statement does not address Mr. Smith's plea to criminal endangerment specifically, it negates any reasonable probability that Mr. Smith would have proceeded to trial had he been correctly advised about the elements of criminal endangerment and the elements of operating a clandestine laboratory. Obtaining pretrial release and a lighter sentence was obviously more important to Mr. Smith than contesting his guilt at trial.

In addition, Mr. Smith's reckless disposal of the ammonia – taking it from the house himself and discarding it by the side of the road, rather than contacting authorities – is sufficient to support his conviction for criminal endangerment. Appellant Br. at 16, 11, *State v. Smith*, No. DA 11-0682 (Mont. Dec. 7, 2011) (CD 11-15); Mot. to Withdraw Guilty Plea, p. 9; *State v. Smith*, No. CDC-2203-141 (Mont. 1st Jud. Dist., Aug. 26, 2010)(CD 11-9); Aff. in Supp. of Information, p. 4.

While Mr. Smith also claims counsel failed to investigate the case, he does not describe any real fact or viable defense that counsel missed. For instance, in his appeal to the Montana Supreme Court, Mr. Smith speculated that "confronting [witness] McDaniel 'to his face' may have very well produced compelling reason to believe Smith could not have known a chemical was present in the residence until the moment it became airborne while [Mr. Smith was] searching for McDaniel's laundry."

Appellant Br. at 11, *State v. Smith*, No. DA 11-0682 (Mont. Dec. 7, 2011) (doc. 11-15); *see also id.* at 12. Speculation is legally insignificant.

No reasonable defendant, advised of the pertinent facts and law and knowing what Mr. Smith has said he knows about what actually occurred, would forego the advantages of pleading guilty to criminal endangerment and instead proceed to trial on the original charge of operating a clandestine laboratory. *Hill*, 474 U.S. at 59-60.

### 3. Conclusion

Mr. Smith's allegations, even if proved, would not establish either that counsel's advice was wrong or that there is a reasonable probability that Mr. Smith would have proceeded to trial if he had been represented by competent counsel. All claims of ineffective assistance of counsel should be denied.

### C. Trial Court's Jurisdiction

The trial court obtained jurisdiction when Mr. Smith was charged with a felony, that is, operating a clandestine laboratory. Mont. Code Ann. §§ 3-5-302(1)(a), 45-9-132(1)(a), 46-11-102(1) (2001). Even if Mr. Smith could mount a federal due process claim if the trial court really had lost jurisdiction, *cf. Hicks v. Oklahoma*, 447 U.S. 343, 345-46 (1979), a Montana court does not lose jurisdiction even if an amended information is invalid. *See State v. Cardwell*, 625 P.2d 553, 556 (Mont. 1981) ("where an unauthorized or otherwise improper amended information is

quashed or dismissed, further proceedings may be had on the original information");

*see also Parker v. Crist*, 621 P.2d 484, 487 (Mont. 1980) (holding that failure to object before trial waives any defects and finding no material defect where affidavit filed with original information also establishes probable cause for amended information). Mr. Smith's claim relating to the trial court's jurisdiction should be denied.

### D. Lesser Included Offenses

Mr. Smith's claim that he was not made aware of lesser included offenses is misdirected because criminal endangerment was charged solely as part of the plea bargain. He had no right to be tried on the charge of criminal endangerment and therefore no right to determination of his liability for negligent endangerment as a lesser included offense. Mont. Code Ann. § 46-16-607 (2001). And, even if he had had that right, no evidence indicated he acted negligently. *Cf. State v. German*, 30 P.3d 360, 362 ¶¶ 11-13 (Mont. 2001).

### E. Fair Notice

There is no reason to believe Mr. Smith would have done anything differently had he been given clearer or quicker notice of the elements of criminal endangerment. *Cf. Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993). As already explained, there is also no reasonable probability he would have chosen not to plead guilty if he had been

sooner informed of the elements. *Supra* Part III.B(2). Mr. Smith's claim that he was unconstitutionally deprived of fair notice should be denied.

## V. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2254 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Mr. Smith attempts to take advantage of what he perceives as a technical defect in his guilty plea to criminal endangerment, entered in 2003. But the plea colloquy was adequate to support the trial court's finding the plea was voluntary. Mr. Smith fails to show competent counsel could not have advised him to plead guilty, nor does he show a reasonable probability that he would have foregone the advantages of pleading guilty to criminal endangerment in order to stand trial on the charge of operating a clandestine laboratory. Mr. Smith's claim the trial court lost jurisdiction is wrong, no lesser included offense was available under the facts of the case, and he

was not prejudiced by any lack of advance notice of the elements of criminal endangerment.

Although Mr. Smith's petition asserted he was deprived of a constitutional right, the State's exhibits demonstrate that there is no substance to that showing. There is no reason to encourage further proceedings. A COA is not warranted and should be denied.

Based on the foregoing, the Court enters the following:

**RECOMMENDATION**

1. The Petition (CD 1) should be DENIED on the merits.

2. The Clerk of Court should be directed to enter by separate document a judgment in favor of Respondents and against Petitioner.

3. A certificate of appealability should be DENIED.

**NOTICE OF RIGHT TO OBJECT
TO FINDINGS & RECOMMENDATION
AND CONSEQUENCES OF FAILURE TO OBJECT**

Pursuant to 28 U.S.C. § 636(b)(1), Mr. Smith may serve and file written objections to this Findings and Recommendation within fourteen (14) days of the date entered as indicated on the Notice of Electronic Filing. If Mr. Smith files objections, he must itemize each factual finding to which objection is made and must identify the evidence in the record he relies on to contradict that finding; and he must itemize each

recommendation to which objection is made and must set forth the authority he relies on to contradict that recommendation. Failure to assert a relevant fact or argument in objection to this Findings and Recommendation may preclude Mr. Smith from relying on that fact or argument at a later stage of the proceeding. A district judge will make a de novo determination of those portions of the Findings and Recommendation to which objection is made. The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendation. Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

<u>Mr. Smith must immediately notify the Court of any change in his mailing address by filing a "Notice of Change of Address."</u> Failure to do so may result in dismissal of his case without notice to him.

DATED this 22nd day of January, 2013.

                                       /s/ Keith Strong
                                       Keith Strong
                                       United States Magistrate Judge